UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TERRANCE L. RELEFORD,<br><br>                    Plaintiff,<br><br>     v.<br><br>WASHINGTON DEPARTMENT OF CORRECTIONS, *et al.*,<br><br>                    Defendants. | CASE NO. C13-1799-RSM-JPD<br><br>REPORT AND RECOMMENDATION |

INTRODUCTION AND SUMMARY CONCLUSION

Plaintiff Terrance Releford is a state prisoner who brings this action under 42 U.S.C. § 1983 to allege violations of his Fourth and Fourteenth Amendment rights by Washington Department of Corrections ("DOC") Community Corrections Officer ("CCO") Wendy Schroeder. Plaintiff seeks release from custody, damages, and an order directing CCO Schroeder to undergo additional training. Defendant Schroeder now moves for summary judgment.[1] Plaintiff has filed a response in opposition to defendant's summary judgment motion, and

---

[1] Defendant has also filed a motion for a protective order to preclude plaintiff from conducting any discovery pending the outcome of her motion for summary judgment. That motion (Dkt. 13) is STRICKEN as moot.

REPORT AND RECOMMENDATION
PAGE - 1

defendant has filed a reply brief in support of her motion.  The Court, having reviewed defendant's summary judgment motion, and the balance of the record, concludes that defendant's motion should be granted, and plaintiff's complaint and this action should be dismissed with prejudice.

## FACTS

Plaintiff was sentenced on January 26, 2007 for unlawful possession of a firearm in the first degree.  (Dkt. 14, Ex. 1 at 2.)  Plaintiff's sentence was imposed under the Drug Offender Sentencing Alternative ("DOSA"), RCW 9.94A.660.  (*See id*.)  DOSA sentences can be either prison-based or treatment-based.  RCW 9.94A.660(3).  Plaintiff received a prison-based DOSA sentence and, thus, he served a portion of his sentence in prison before being released to serve the community custody portion of his sentence.  (*See* Dkt. 5 at 7.)  Plaintiff was released from prison on November 11, 2011 to begin serving the community custody portion of his sentence.  (Dkt. 14, Ex. 1 at 2.)  CCO Schroeder assumed supervision of plaintiff on October 9, 2012.  (*Id*.)

DOC policy mandates that all DOSA offenders submit to weekly drug testing for a three month period following their release from prison.  DOC Policy 420.380(IV)(C)(3).  If results are negative during that testing period, DOSA offenders are then subject to testing in accordance with standard community custody guidelines, or in accordance with specific conditions of their sentence or offender supervision plan.  (*Id*.)  CCOs are tasked with ensuring that DOSA offenders comply with the drug testing requirements set forth in DOC Policy 420.380.  *See* DOC Policy 670.655(IV)(C).

At the time of the two drug testing incidents at issue in this case, December 12, 2012 and May 3, 2013, plaintiff was subject to monthly on-site drug testing.  (Dkt. 14, Ex. 1 at 2.)  Prior to

those incidents, plaintiff had violated his DOSA conditions on numerous occasions by using drugs. (*See* Dkt. 14, Ex. 1 at 2-3.) Though plaintiff's DOSA sentence could have been revoked based upon those previous violations, and plaintiff could have been returned to custody, plaintiff was allowed to remain on community supervision. (*See id*.)

Under RCW 9.94A.631, the current version of which took effect on June 1, 2012, a CCO is permitted to arrest an offender, without a warrant, if the offender violates any condition or requirement of his sentence. Testing positive for a prohibited substance constitutes a violation of an offender's DOSA sentence. (*See* Dkt. 14, Ex. 1 at 3.) Drug testing in the community is conducted using an instant on-site test. (*See id*., Ex. 1, Attach. A at 4 (DOC 420.380(IV)(A)).) The on-site drug test used by DOC detects several different substances including cocaine. (*See id*., Ex. 1, Attach. A at 6 (DOC 420.380(VI)(A)).)

DOC policy does not mandate that a positive urinalysis result obtained through an instant on-site test be confirmed by a lab, though additional laboratory testing may be approved by a Community Corrections Supervisor ("CCS"). (*See id*., Ex. 1, Attach. A at 4 (DOC 420.380(IV)(A)).) An offender who tests positive for a prohibited substance in an instant on-site drug test, but denies use of such a substance, may be allowed to provide a new specimen for testing. (*See id*., Ex. 1, Attach. A at 8-9 (DOC 420.380(VIII)(B)(2)).) However, DOC policy does not mandate that an offender be afforded an opportunity to submit a second sample for testing. *Id*.

On December 12, 2012, plaintiff submitted to on-site urinalysis at the DOC field office in Federal Way, Washington and tested positive for cocaine use. (*See* Dkt. 5 at 5 and Dkt. 14, Ex. 1 at 3.) The positive result was witnessed by CCO Schroeder, CCS Misi-Namese Liulamaga, and

REPORT AND RECOMMENDATION
PAGE - 3

CCO Wayne Derouin.  (*See* Dkt. 14, Ex. 1 at 3 and Exs. 2 and 3.)  Plaintiff denied use but was not permitted the opportunity to submit a second sample because he was very agitated at that time leading to concerns for officer safety.  (*Id*., Ex. 1 at 4 and Ex. 2 at 2.)

CCS Liulamaga approved plaintiff's arrest and placement in total confinement in accordance with RCW 9.94A.631 and DOC 420.380.  (*Id*., Ex. 2 at 2.)  CCS Liulamaga also approved a request by CCO Schroeder to send the urine sample obtained from plaintiff on December 12, 2012 to Sterling Laboratories for further testing.  (Dkt. 14, Ex. 2 at 2.)

Because the December 12, 2012 violation would have been plaintiff's seventh violation during the term of his community custody, the DOC was authorized to hold plaintiff in total confinement pending a sanction hearing.  *See* RCW 9.94A.737(2)(b) and (4)(b).  On December 14, 2012, CCO Schroeder received laboratory results from Sterling Laboratories showing that plaintiff's sample tested negative for cocaine under their testing parameters and plaintiff was released from confinement.  (Dkt. 14, Ex. 1 at 4.)

On February 19, 2013 and April 24, 2013, plaintiff was found to have again violated the conditions of his community custody by using cocaine, but was again permitted to remain on community supervision.  (*See id*.)

On May 3, 2013, plaintiff submitted to on-site urinalysis at the DOC field office in Federal Way and tested positive for cocaine use.  (*Id*.)  The positive result was witnessed by CCO Schroeder and CCO Berisford Morse.  (*See id*., Ex. 1 at 4 and Ex. 4.)  CCS Liulamaga once again approved plaintiff's arrest and placement in total confinement.  (*Id*., Ex. 1 at 4 and Ex. 2 at 2.)  Plaintiff denied use but his behavior again gave rise to concerns for officer safety and, thus, plaintiff was not permitted the opportunity to submit a second sample.  (*See id*.)  Once again,

REPORT AND RECOMMENDATION
PAGE - 4

however, CCO Schroeder requested, and received from CCS Liulamaga, approval to send the sample to Sterling Laboratories for further testing. (Dkt. 14, Ex. 1 at 4 and Ex. 2 at 2.) On May 5, 2013, CCO Schroeder received the laboratory results from Sterling Laboratories showing that plaintiff's sample tested negative for cocaine and plaintiff was released from confinement the following day. (*Id*., Ex. 1 at 5.)

Despite the negative results ultimately obtained in the December 2012 and May 2013 incidents, plaintiff had still accumulated a total of twelve violations during his time on community supervision prompting CCO Schroeder to talk to plaintiff about his drug use. (*Id*.) During her conversation with plaintiff, CCO Schroeder suggested that plaintiff seek treatment for his drug problem. (*Id*.) Plaintiff agreed and CCO Schroeder obtained a referral for plaintiff to American Behavioral Health Services (ABHS), an inpatient, voluntary treatment facility. (*Id*.) Plaintiff, however, never entered treatment at ABHS. (*Id*.) CCO Schroeder concluded her supervision of plaintiff effective May 31, 2013. (*Id*.)

## DISCUSSION

Plaintiff asserts in his complaint that CCO Schroeder violated his rights under the Fourth and Fourteenth Amendments when she had him arrested and placed in total confinement after testing positive for cocaine use in two on-site drug tests only to have subsequent laboratory testing conclude that the same samples tested negative for cocaine. (Dkt. 5 at 5-6.) Plaintiff claims that absent any actual violation of the conditions of his community supervision, his confinement was unlawful. (*See id*.) Plaintiff also asserts in his complaint that his rights under the Fourteenth Amendment were violated when procedures for processing specimens to be sent to the laboratory for further testing were not properly followed. (*Id*. at 7.) Finally, plaintiff

REPORT AND RECOMMENDATION
PAGE - 5

asserts in his complaint that his rights under the Fourteenth Amendment were violated when CCO Schroeder ordered him to go to in-patient drug treatment. (Dkt. 5 at 8.)

Defendant argues in her motion for summary judgment that plaintiff has not established any violation of a federally protected right. (Dkt. 14.) She argues in the alternative that she is entitled to qualified immunity. (*See id*.) The Court need not address defendant's qualified immunity argument because, as explained below, the Court concurs that plaintiff has not established a violation of any federally protected right.

<u>Motion for Summary Judgment</u>

Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, there exists "no genuine dispute as to any material fact" such that "the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Material facts are facts which might affect the outcome of the pending action under governing law. *See Anderson*, 477 U.S. at 248. Genuine disputes are those for which the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

In response to a properly supported summary judgment motion, the nonmoving party may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts demonstrating a genuine issue of fact for trial and produce evidence sufficient to establish the existence of the elements essential to his case. *See* Fed. R. Civ. P. 56(e). A mere scintilla of evidence is insufficient to create a factual dispute. *See Anderson*, 477 U.S. at 252. In ruling on a motion for summary judgment, the court may not weigh the evidence or make credibility determinations. *Id*. at 248.

<u>Section 1983 Standard</u>

In order to sustain a cause of action under 42 U.S.C. § 1983, a plaintiff must show (i) that he suffered a violation of rights protected by the Constitution or created by federal statute, and (ii) that the violation was proximately caused by a person acting under color of state law. *See Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). The causation requirement of § 1983 is satisfied only if a plaintiff demonstrates that a defendant did an affirmative act, participated in another's affirmative act, or omitted to perform an act which he was legally required to do that caused the deprivation complained of. *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978)).

<u>Arrest and Confinement</u>

The Due Process Clause of the Fourteenth Amendment confers both procedural and substantive rights. *See Armendariz v. Penman*, 75 F.3d 1311, 1318 (9th Cir. 1996). "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). A § 1983 claim based upon procedural due process has three elements: (1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; and, (3) lack of process. *Portman v. County of Santa Clara*, 995 F.2d 898 (9th Cir. 1993).

The substantive component of the Due Process Clause protects individuals from the arbitrary deprivation of their liberty by government. *County of Sacramento v. Lewis*, 523 U.S. 833, 845-49 (1998). The Supreme Court has made clear that "only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense.'" *Id*. at 846 (citing, *Collins v.*

REPORT AND RECOMMENDATION
PAGE - 7

*Harker Heights*, 503 U.S. 115, 129 (1992).  The Court has "spoken of the cognizable level of executive abuse of power as that which shocks the conscience." *Id*.

Plaintiff complains that defendant violated his Fourteenth Amendment rights when she had him placed in total confinement for an alleged violation of the conditions of his supervised release when, in fact, there was no such violation.  There is no dispute that, at times relevant to this action, plaintiff was under community supervision pursuant to a DOSA sentence, and that, as a DOSA offender, plaintiff was prohibited from using illicit drugs and was required to comply with drug testing requirements.

The evidence in the record establishes that drug tests for offenders on community supervision are conducted by DOC employees using an instant on-site test and that laboratory confirmation may be obtained, but is not required. (Dkt. 14, Ex. 1, Attach. A at 4 (DOC 420.380(IV(A))).)  An offender who tests positive for a prohibited substance in an on-site test may be arrested and placed in total confinement pending a hearing.  (*Id*., Ex. 1, Attach. A at 10 (DOC 420.380(X)(C).)  Plaintiff tested positive for cocaine use in the on-site tests administered on December 12, 2012 and May 3, 2013, and he was arrested and confined in accordance with policy.  Plaintiff's samples were sent to the laboratory at the request of CCO Schroeder and once the laboratory returned its results revealing that plaintiff's samples tested negative for cocaine, plaintiff was released from custody.

While plaintiff argues that he should have been given an opportunity to provide a second sample on each of these occasions because he denied use, DOC policy permits, but does not require, such a step, and the evidence in the record establishes that plaintiff's behavior at the time of his two arrests raised legitimate safety concerns.

REPORT AND RECOMMENDATION
PAGE - 8

In sum, plaintiff received all of the process he was due in light of the positive on-site tests. Fortunately for plaintiff, CCO Schroeder went beyond the minimal process owed to plaintiff and requested additional laboratory testing of his samples which resulted in plaintiff being released from custody and not accumulating additional violations. It is clear from the evidence in the record that plaintiff's arrest and confinement following his positive on-site drug tests were consistent state law and DOC policy and did not violate plaintiff's procedural or substantive due process rights.

## Unreasonable Search and Seizure

To the extent plaintiff contends that CCO Schroeder's conduct violated his Fourth Amendment rights, his claim also fails. The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. Amend. IV. However, in *Samson v. California*, 547 U.S. 843, 857 (2006), the Supreme Court held that the Fourth Amendment does not prohibit a law enforcement officer from conducting a warrantless, suspicionless search of a parolee under a state parole search law. In *United States v. Betts*, 511 F.3d 872, 876 (9th Cir. 2007), the Ninth Circuit concluded that the rule announced in *Samson* applied as well to individuals on supervised release. A urine test constitutes a search within the meaning of the Fourth Amendment. *Ferguson v. City of Charleston*, 532 U.S. 67, 76 (2001).

Plaintiff was required by the terms of his DOSA sentence to submit to drug testing. Plaintiff signed a consent form acknowledging this requirement and agreeing to comply with the requirements of the DOC testing program. (*See* Dkt. 14, Ex. 1, Attch. C.) Plaintiff submitted to the two on-site drug tests at issue in this case as required. There is no evidence in the record to

REPORT AND RECOMMENDATION
PAGE - 9

suggest that the drug testing, performed as a condition of plaintiff sentence and in accordance with state law and DOC policy, violated plaintiff's Fourth Amendment rights.

Processing of Samples

Plaintiff also asserts in his complaint that his Fourteenth Amendment rights were violated when the urine specimens which tested positive in the on-site drug tests were not processed in accordance with DOC policies and procedures before being sent to the laboratory for further testing. Plaintiff offers no evidence to support his assertion that the specimens at issue were not processed in accordance with policy. The record is also devoid of any evidence that CCO Schroder was the individual responsible for processing the samples. CCO Schroeder states in her declaration submitted in support of her motion for summary judgment that she did not administer the tests, she only witnessed the results. (*See* Dkt. 14, Ex. 1 at 4 and 5.) Finally, plaintiff fails to make clear how the alleged mishandling of the samples sent out for additional testing violated his constitutional rights when it was that testing which resulted in his release from custody. Plaintiff fails to establish any violation of his Fourteenth Amendment rights arising out of the processing of his urine specimens.

In-Patient Drug Treatment

Finally, plaintiff asserts in his complaint that CCO Schroeder committed staff misconduct, and violated his rights under the Fourteenth Amendment, when she ordered him to go to in-patient drug treatment. Plaintiff contends that under DOC policy, prison-based DOSA offenders may not be required to enter in-patient treatment. The evidence in the record establishes that CCO Schroeder merely obtained a referral for plaintiff to attend an in-patient, voluntary treatment program to help plaintiff address his drug problem, she did not require that

REPORT AND RECOMMENDATION
PAGE - 10

he attend the program and, in fact, plaintiff never did attend the program.  Plaintiff fails to establish any violation of his Fourteenth Amendment rights arising out of CCO Schroeder's efforts to obtain a referral for drug treatment.

## CONCLUSION

Based upon the foregoing, this Court recommends that defendant's motion for summary judgment be granted and that plaintiff's complaint and this action be dismissed with prejudice.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **twenty-one (21)** days of the date on which this Report and Recommendation is signed.  Failure to file objections within the specified time may affect your right to appeal.  Objections should be noted for consideration on the District Judge's motion calendar for the third Friday after they are filed.  Responses to objections may be filed within **fourteen (14)** days after service of objections.  If no timely objections are filed, the matter will be ready for consideration by the District Judge on **May 9, 2014**.

DATED this 17th day of April, 2014.

*James P. Donohue*
_____
JAMES P. DONOHUE
United States Magistrate Judge